Filed 7/29/14  Gerber v. Sweetwater Union High School Dist. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GEORGE R. GERBER, JR.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SWEETWATER UNION HIGH SCHOOL DISTRICT et al.,<br><br>    Defendants and Respondents. | D063576<br><br><br>(Super. Ct. No. 37-2010-00106348-CU-WT-SC) |


APPEAL from a judgment of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.


Donald R. Holben & Associates, Amelia A. McDermott, Donald R. Holben and William Pabarcus for Plaintiff and Appellant.

Stutz Artiano Shinoff & Holtz, Daniel R. Shinoff, Paul V. Carelli, IV and Lee T. Patajo for Defendants and Respondents.

Plaintiff and Appellant George Gerber, Jr., appeals from the judgment after the court granted the summary judgment motions of defendants and respondents Sweetwater Union High School District (District) and Gary Gauger, Henry "John" Allshouse, Todd Torgerson, Mike Kelley, Vincent Andrilli, Fred Ferguson, Jr., Rip Courter and Jesus Gandara (collectively, individual defendants)[1] on Gerber's claims under the Fair Employment and Housing Act (Gov. Code, § 12940 et seq. (FEHA)) and related employment tort claims. The court found summary judgment was proper because Gerber's claims were untimely and because none of the equitable exceptions to toll the limitations period applied.

Gerber on appeal contends the court erred in granting the summary judgment motions because he presented admissible evidence to show there was actionable conduct by the District—namely his termination from employment—that occurred within one year of the date he filed his administrative complaint with the Department of Fair Employment and Housing (DFEH). (See Gov. Code, § 12960, subd. (d).) Gerber alternatively contends the court erred in granting such motions because he proffered sufficient admissible evidence to show one or more equitable exceptions applied to toll the applicable one-year limitations period.

---

[1] The individual defendants at one point appear to have all been District employees.

Finally, Gerber contends the court erred when it granted the summary judgment motions of the individual defendants on his second cause of action for harassment and on his eighth cause of action for intentional infliction of emotional distress (IIED), which also named the District as a defendant.

As we explain, we independently conclude the court properly granted the motions for summary judgment in favor of the District and the individual defendants. Affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

The District—a public entity school district—in 1990 hired Gerber as a "classified long[-]term substitute HVAC Mechanic" in the maintenance department. Gerber subsequently became a full-time District employee and worked as an HVAC mechanic. District employee defendant Henry "John" Allshouse served as Gerber's direct supervisor. Between 2001 and 2005, Gerber received favorable employment evaluations.

In early 2006 Gerber reported to Allshouse and both to the District's Hazmat and safety supervisor, defendant Mike Kelley and to the District's Hazmat technician, defendant Vince Andrelli, various safety issues he had discovered at the District. Gerber contended these reports were "not taken well" by his supervisors because they were already under pressure after an audit allegedly criticized the District's maintenance department. As a result of the audit, the District hired a new maintenance director, defendant Rip Courter.

Gerber further contended that in January, February and March 2006, per District policy, he reported to his supervisors the presence of asbestos at several repair sites within the District. In early March 2006, Gerber sought medical treatment for exposure

3

to asbestos while making a repair at a District school. According to Gerber, Allshouse was "furious" with him for seeking medical attention regarding his alleged exposure to asbestos.

In mid-March 2006, Gerber filed a complaint with OSHA regarding the safety and asbestos issues he had encountered during his employment with the District. Gerber reported the District and its supervisors were retaliating against him for reporting these safety issues and as such, his work environment was becoming increasingly hostile. According to Gerber, the retaliation became worse as he continued to report ongoing safety violations within the District, including additional reports of asbestos, to supervisors Allshouse, Kelley and Courter.

Gerber was subsequently disciplined by the District as a result of what Gerber contended were false statements, including that the District previously had provided Gerber asbestos training when in fact he claimed he had not received such training. Gerber also contended his supervisors contrived "false issues and incidents to 'paper' [his] file" and claimed these efforts were an abuse of their "power and authority" as they retaliated against him "for reporting health and safety issues he observed at the District."

In mid-April 2006, Gerber filed an administrative complaint with the DFEH alleging retaliation, harassment and discrimination by supervisors Courter, Allshouse and Kelley allegedly for his reporting of OSHA violations and for what he termed was a "mental disability." Gerber also sought a right-to-sue letter in connection with his administrative complaint. The DFEH issued notices of case closure in May 2006. Gerber, however, did not file suit on his 2006 administrative complaint.

4

Gerber contended that throughout the remainder of 2006, Courter, Allshouse and Kelley "escalated their efforts to retaliate against [him]," in response to his administrative complaint, his internal grievances against the District and his presentation of a letter to the District's superintendent complaining of the abuse of authority by his supervisors. Gerber in this letter complained his supervisors made up " 'new rules' " to set him up for failure.

Gerber claimed Kelley struck him in mid-January 2007, after he reported the discovery of additional asbestos at a school within the District. Gerber reported this incident to the District and its new director of maintenance, Rick Carlton. According to Gerber, Carlton advised Gerber to file a police report after work. Subsequently, defendant Fred Ferguson, the District's director of classified personnel, gave Gerber notice he was being reassigned to work in a District warehouse shredding paper. Gerber claimed the warehouse had no phone or heat and the poor working conditions made him ill. Gerber subsequently submitted to Ferguson several unsafe working condition forms. Gerber went out on disability leave in early February 2007 for "work-related injuries."

While on leave, the District moved to terminate Gerber from employment because the District viewed Gerber's complaints and claimed stress as an excuse for his poor work performance. The District also claimed Gerber should be terminated for making false accusations against Courter, Allshouse and Kelley. Gerber in response claimed the District's efforts to terminate him was further evidence of its retaliation, harassment and discrimination against him for reporting ongoing safety issues within the District.

5

In March 2007, Gerber filed a tort claim against the District, Courter, Allshouse, Kelley and Ferguson. Gerber sought damages for Kelley's alleged assault and for the retaliation and harassment he claimed he continued to endure for reporting health and safety violations. In early May 2007, Gerber also filed a worker's compensation claim for injuries he received while working in the "deplorable" conditions at the District's warehouse.

In early May 2007, District Superintendent Jesus Gandara presented Gerber with a notice of proposed dismissal in which defendant Gandara accused Gerber of "lying," stated Gerber could not be "trusted" to work in the District again and found Gerber's actions to be " 'dishonest, immoral, and illegal . . . and threatening." Gerber denied these accusations.

In early August 2007, the District placed Gerber on unpaid administrative leave pending final action by the District school board. In late August 2007, the District school board rejected the District's recommendation to terminate Gerber and instead suspended him for 20 days without pay. Gerber protested the suspension and claimed it was premised on false information.

After returning to work, Gerber contended the District provided him "constantly changing directives and work assignments" and the District held him to "different terms and conditions of employment than other maintenance department employees." As discussed *post*, the hearing officer that presided over Gerber's multi-day hearing in 2009 found that Gerber made a number of reports regarding safety suggestions/unsafe conditions within the District, many having to do with asbestos.

6

However, the hearing officer also found that the District "promptly responded and remedied, where called for, the safety concerns" Gerber raised; that on more than one occasion Gerber "intentionally set the thermostats" at San Ysidro Adult School (SYA) to "extreme temperatures and locked out controls in several classrooms, thereby endangering the health and wellbeing of students, faculty and staff at that location"; that from late June 2008 through December 2008, Gerber "repeatedly remained in the maintenance yard more than 15 minutes beyond the start of his shift with no legitimate work-related purpose in defiance of repeated oral and written directives"; that Gerber "repeatedly returned to the District maintenance yard during his lunch break in direct defiance of repeated oral and written directives"; that on October 1 and October 2, 2008, Gerber without justification refused the "reasonable request of his supervisor . . . to sign for keys so that he could commence his work"; that in mid-October 2008, Gerber "refused to follow the reasonable directive of his supervisor to order HVAC parts through John Allhouse"; that in early November 2008, Gerber was disrespectful to his supervisor when he refused to answer questions from his supervisor and when he continued to make personal copies with District supplies and equipment; that after November 5, 2008, Gerber "failed to properly detail and account for his time on his time sheets as directed by his supervisor [based on] the sample time sheet given to him"; and that Gerber "failed to meet the expectations of his supervisor and the District's [r]isk [m]anager to resume

working a full 8-hour shift and took unauthorized 'work comp' leave on at least six days between November 18 and December 4, 2008."[2]

In April 2009, the District placed Gerber on administrative leave with pay pending termination charges that as noted, were the subject of a multi-day hearing as required by District policy and regulations and by the Education Code. The charges against Gerber brought by the District included: "1. inefficiency, inattention to and dereliction of duty and failure to perform assigned duties in a satisfactory manner; 2. insubordination and failure to observe reasonable rules of school District superiors; 3. persistent discourteous, abrasive, and offensive conduct toward the public, fellow employees, and students, or other willful failure of good conduct tending to injure the public service; 4. insolence and disrespect toward his supervisor; and 5. improper use and abuse of sick leave and other leave privileges."

---

[2]    As discussed in more detail *post*, Gerber did not challenge the hearing officer's findings. The hearing officer also found Gerber was "inefficient, inattentive to his duties, failed to perform his duties in a satisfactory manner, insubordinate, persistently discourteous, abrasive and offensive, willfully failed to exhibit good conduct that injured the public service, was insolent and disrespectful toward his supervisor, and abused workers' compensation leave privileges. His contempt for supervision and the District was palpable." As a result, the hearing officer concluded the District had "more than met its burden to prove that just cause exists for its recommendation to discharge Mr. Gerber from employment based on the charges set forth in the District's Notice of Disciplinary Action dated January 30, 2009."

As noted by the hearing officer, Gerber in response maintained the District sought to terminate him as retaliation for his " 'whistleblower' reports concerning asbestos." The hearing officer ruled as follows on this point in what the hearing officer found was the "overarching allegation" that was "oft-repeated" by Gerber and his union representative throughout the multi-day proceeding:

"The Union's principal argument is that the District is retaliating against Gerber because he was diligent in his concern for the safety of himself and others regarding asbestos. Gerber's claim is incredible. Gerber's self-appointed mission [footnote 3] to find asbestos, and thereby possibly expose himself to it, belies his stated concerns of safety for himself and others. . . . . His blatant contempt for the District's prompt and thorough responses to his asbestos reports is clear in his refusal to comply with the District's safeguards and his unreasonable and ill-informed demands regarding asbestos reports. (Citation and fn. omitted.)

"[Footnote 3: Fred Holloway, former Union President, testified that 'George [Gerber], he felt it his mission to alleviate the condition (asbestos) throughout the whole district… I just told him, well now, that's not your job.']

"Gerber complained that he was reprimanded for reporting asbestos. In fact, the reprimand that he received on April 18, 2008, was not for reporting asbestos but for inappropriate handling of it once he suspected that asbestos might be present. [Citation.] Similarly, the reprimand he received on July 28, 2008, was for leaving his work area to seek out asbestos (a misuse of work time) and to follow proper reporting procedures

9

(calling in the report rather than submitting a written report [footnote 5 omitted] and leaving his work area to take photographs). [Citation.]

"There was no evidence that Gerber is a trained hazardous materials professional or that he has any specialized knowledge of asbestos. Quite the contrary. In fact, Gerber testified at hearing that he was not even properly trained as an HVAC technician with respect to asbestos, having only seen the training video three times. [Citation.] Yet he demanded 'exposure reports' when no such reports existed. [Footnote 6; citation.] Gerber insisted on 'getting a complete list of ALL asbestos containing material with-in (sic) the entire district. This means what and where … I [i.e., Gerber] also need to know what signage and labels the district is utilizing for the various hazardous materials and especially those for asbestos so that I will be able to readily identify the facilities and other possible area[s] . . . containing asbestos and other hazardous materials'. Gerber went on in his July 7, 2008, response to [the] June 26 and 27, 2008, directives by stating 'In order to comply with the portion of your directive about modernized buildings I will need a list of all of the sites and each individual building that has been properly abated for hazardous materials including but not limited to asbestos. I also need a list for all of the buildings that were not properly abated as well so as to avoid situations such as what occurred at [a school within the District] where modernization was performed but proper abatement was not . . . It also seems to me that you should want someone like me to observe areas of concern . . . so as to protect the thousands of students, staff and the public in general'. [Citation.] Clearly Gerber saw himself as an asbestos crusader.

10

"[Footnote 6: Gerber was scheduled to see the District's doctor for a medical assessment on June 23, 2008 but cancelled his appointment. Getting a medical assessment after a *suspected* exposure is the only way a possible exposure can be documented. If his concern, as stated, was to document an 'exposure' in case he developed some related disease in the future, he failed to take the necessary step that was offered by the District.]

"One of the ways to determine whether an individual has been exposed to asbestos is to have a Medical Asbestos Surveillance Examination with a physician. Those examinations remain as history of individuals having an incident involving asbestos so that should some future health condition associated with a possible asbestos exposure manifest, the documentation would be available. Although an appointment was made for Gerber [at a local medical center] to obtain such an examination following his June 11, 2008, Report of Unsafe Conditions regarding asbestos . . . , Gerber cancelled his appointment. At that appointment, copies of his previous reports had been copied to give to him as he requested. Because he did not show up, those reports had to be mailed to him directly. [Citation.]

"Another way to document a suspected asbestos exposure is to file a workers' compensation claim. Gerber had knowledge of that opportunity as he had a pending workers' compensation claim open during this period of time. Additionally, the workers' compensation procedures were available to him in the Injury and Illness Prevention Manual (IIPM). Gerber testified that he had received a copy of the Sweetwater Accident Report form and the IIPM in the past. [Citations.] He was also advised in a letter from

11

[the defendant] Todd Torgerson that if he wanted to file a Workers' Compensation claim that he was to complete the employee section of the 'DWC 1 form' that was enclosed, keep a copy for his records and return the rest of the form to Torgerson's office. [Citation.]

"Gerber also wanted to 'exercise his right' to notification of asbestos clean-up times and wanted to be present to observe the clean up even though he is not trained to do asbestos clean-up. [Footnote 7; citations.] To his request to attend the clean-up, Torgerson apprised Gerber that he had checked with two representatives at Cal-OSHA who indicated that providing Gerber with the sampling results from the independent third party would be sufficient. On August 28, 2008, Torgerson sent the testing and mediation report to Gerber shortly after it was finished. [Citation.] However, even at hearing, Gerber still maintained that 'if you take the proper precautions, I wouldn't see why that would be an issue' referring to his request to be present during asbestos cleanup at [a District school]. [Citations.] Gerber's attempt to exercise his 'right' to observe asbestos clean-up and his alleged concern for his future health are contradictory.

"[Footnote 7: In addition, he [i.e., Gerber] would be risking exposure to asbestos were he to physically be present to observe the clean-up process.]

"Gerber sought out sites to inspect for asbestos which were not incidental to or required in the performance of his duties. An example of this is his June 11, 2008, Unsafe Conditions report where he reported friable [footnote 8 omitted] asbestos that he found at [a District school]. Michael Kell[e]y, the Hazardous Materials and Safety Supervisor who investigated Gerber's June 11th report, sent an email to Todd Torgerson,

12

the Director of Risk Management, reporting that the grill covering the under-deck (tunnel) location, where the friable asbestos was located, had to have been pried open since it had rusted shut. [Citation.] It is highly questionable that Gerber legitimately discovered this material in the normal course and scope of his HVAC duties. Rather, it is more likely that he sought out such materials as suggested by a report from [a District coworker], with whom he was working at the time. [This coworker] told Gauger [a District maintenance manager] that Gerber had taken off when [the coworker] asked Gerber to help him. Instead, Gerber grabbed a camera, left his work are and said, 'I've got better things to do.' [Citation.]

"There was no evidence to support Gerber's claim either that he was a legally-protected 'whistle-blower' or that the District was retaliating against him for reporting asbestos within the District. Rather, the District took seriously his safety reports of asbestos and other issues, looking into them and responding back to him with its conclusions and/or remediation, often within a few days. Gerber's claim that he was trying to protect the health and well being of District students, staff and the public is baseless. Equally, his claim of retaliation is without merit. [Citations.] There is no conclusion that can be drawn from the evidence but that Mr. Gerber intentionally and spuriously challenged the District's and its professional contractor's judgment and ability to adequately address asbestos found within the District."

As noted *ante*, the hearing officer found the District had more than met its burden to prove just cause to discharge Gerber from employment. The District terminated Gerber from employment in late January 2010.

13

Gerber did *not* challenge by writ of mandate the hearing officer's report, findings and recommendation to terminate him from employment with the District. (See Cal. Code Civ. Proc., § 1094.5.) Instead, on June 28, 2010, Gerber filed a claim with the District for wrongful termination under the Government Code, in which he sought damages in excess of $100,000. Gerber alleged in his claim that District employees "Gary Gauger, John Allhouse and Todd Torgerson have for the past [four] years harassed and retaliated against [him] for 'whistle blowing' re[garding] asbestos, [and] health [and] safety issues."

Gerber also filed on July 1, 2010,[3] a DFEH complaint alleging that from "2006 to the present, I have been continually harassed, discriminated and retaliated against by my supervisors for whistle blowing and reporting safety and health violations by the District. In addition, I have been assigned to work in dangerous and hazardous facilities which resulted in work related injuries, increased discrimination, harassment and retaliation by [the] District and individuals. I was denied FMLA [i.e., Family and Medical Leave Act] leave." The DFEH issued a notice of case closure on July 19, 2010.

---

[3] The trial court used the date Gerber signed the complaint—June 25, 2010—as the filing date, even though the DFEH complaint itself shows it was filed on July 1, 2010.

14

Gerber sued the District and the eight individual District employees/former employees in mid-December 2010.  As relevant here,[4] Gerber in his verified operative complaint asserted under the FEHA claims against the District for discrimination based on disability (first cause of action); harassment based on disability (second); retaliation (third); failure to prevent harassment (fourth); and failure to accommodate (fifth) (collectively, FEHA-based claims).  Gerber named the individual defendants to his second cause of action for harassment based on disability and to his eight cause of action for IIED, which as noted also included the District.

The defendants filed three motions for summary judgment/adjudication.  The District filed its own motion, and Gauger, Allshouse, Torgerson, Kelley and Gandara, on the one hand, and Courter, Andrilli and Ferguson on the other hand, also each filed a separate motion for summary judgment/adjudication.

After hearing oral argument and taking the matter under submission, the court granted each of the defendants' motions for summary judgment.  With regard to the FEHA-based claims, the court found that Gerber filed his complaint after the expiration of the one-year limitations period for filing an administrative claim with the DFEH (see Gov. Code, § 12960, subd. (d)).  The court rejected Gerber's contention the one-year limitations period was tolled under the equitable-tolling and continuing violations doctrines.

---

4       Gerber on appeal did not challenge the grant of summary judgment to his sixth cause of action for failure to provide break and meal periods and to his seventh cause of action for defamation.  Moreover, Gerber did not challenge the demurrer to his ninth cause of action for violation of civil rights (42 U.S.C. § 1983).

Moreover, the court alternatively found that Gerber did not raise "a triable issue of retaliation. Assuming that plaintiff has established a prima facie case of retaliation, defendant must provide evidence of a legitimate, non-retaliatory explanation for its acts. [Citation.] The hearing officer's report recommending plaintiff be discharged meets defendant's burden. [Exhibit J.] The hearing officer considered and rejected plaintiff's claims that he was being harassed because of his whistleblowing activities. [The hearing officer] describes how plaintiff intentionally sabotaged the thermostats at a school [i.e., SYA] so they were set uncomfortably high and were locked out so they could only be adjusted by a technician. Plaintiff's separate statement fails to set forth any facts to refute the findings."

With regard to Gerber's eighth cause of action for IIED, the court found his government claim was untimely for the same reasons it found his FEHA-based claims untimely. Finally, with regard to the individual defendants, the court applied the same reasoning it used to grant the motion of the District to grant their similar motions for summary judgment.

DISCUSSION

I

*FEHA-Based Claims*

Gerber contends the court erred when it granted summary judgment on his FEHA-based claims. Specifically, he contends that because he was terminated from employment in late January 2010 following the multi-day administrative hearing, the court erred when it found there was no evidence of retaliation, harassment and/or

16

discrimination within the one-year limitations period applicable to administrative complaints filed with the DFEH. He alternatively contends the court erred when it failed to apply one or more of the equitable exceptions to toll the applicable limitations period.

A. *Guiding Principles*

Summary judgment is granted when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

A defendant moving for summary judgment bears the initial burden of proving that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.) If the defendant makes such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of one or more material facts as to that cause of action or as to a defense to the cause of action. (*Aguilar*, at pp. 850-851.) If the plaintiff does not make such a showing, summary judgment in favor of the defendant is appropriate. In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action. . . ." (*Id*. at p. 853.)

On appeal from the entry of summary judgment, "[w]e review the record and the determination of the trial court de novo." (*Kahn v. East Side Union High School Dist.*

17

(2003) 31 Cal.4th 990, 1003.) "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny. [Citation.] We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433; see *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 ["responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact"].)

Moreover, " '[w]hile resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper.' " (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 419 (*Deveny*), quoting *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.)

For employment discrimination claims such as in the instant case, the plaintiff has the initial burden of establishing a prima facie case of discrimination. The burden of going forward with the evidence then shifts to the defendant to produce evidence of a legitimate nondiscriminatory reason for the action taken against the plaintiff. The burden of going forward with the evidence then shifts back to the plaintiff to produce evidence showing the employer's reason is false and a pretext for unlawful discrimination. (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-803; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354-356.) On a motion for summary judgment,

California applies "the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*[, *supra,*] 411 U.S. 792" to a claim for retaliation. (*Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1108-1109). This "burden-shifting analysis" therefore applies to Gerber's FEHA-based claims.

However, a defendant employer's motion for summary judgment "slightly modifies the order of these showings. If, as here, the motion for summary judgment relies in whole or in part on a showing of nondiscriminatory reasons for the discharge, the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination. [Citations.] To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred. [Citations.] In determining whether these burdens were met, we must view the evidence in the light most favorable to plaintiff, as the nonmoving party, liberally construing [the] evidence while strictly scrutinizing defendant's." (*Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097-1098 (*Kelly*).)

California law prohibits sexual harassment in the workplace. (Gov. Code, § 12940, subd. (j)(1).) "The FEHA 'declares certain kinds of discrimination and harassment in the workplace to be "unlawful employment practice[s]." ' " (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471.) Generally, absent certain exceptions not applicable here, an administrative complaint must be filed within one year from the date of the alleged unlawful practice. (See Gov. Code, § 12960, subd. (d) ["No

19

complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred."].)

B. *Statute of Limitations Analysis*

In our independent review of the record and the operative complaint, we conclude the District satisfied its initial burden to show there is a complete defense to Gerber's FEHA-based claims, namely his first through fifth causes of action. (See *Aguilar*, *supra*, 25 Cal.4th at pp. 839-840.)

The *undisputed* evidence (see *Deveny*, *supra*, 139 Cal.App.4th at p. 419) here shows that after the District placed Gerber on paid administrative leave in April 2009, the only contact between Gerber, on the one hand, and the District and its employees, on the other hand, was to attend the multi-day hearing held between May and October 2009. The *undisputed* evidence further shows that Gerber did not file his DFEH complaint until late June/early July 2010, or *more than a year after* any alleged unlawful employment practice. Because statements made in the course of an official hearing are privileged (see e.g., Civ. Code, § 47, subds. (b) & (c)), and thus cannot form the basis of any alleged unlawful employment practice under the FEHA, and because Gerber waited more than a year from the date of any alleged unlawful employment practice by the District to file his administrative complaint, we conclude the District satisfied its burden to show a complete defense to Gerber's FEHA-based claims. The burden then switched to Gerber to proffer admissible evidence raising a triable issue, which would permit a trier of fact to find by a preponderance that the District engaged in an alleged unlawful employment practice within one year from the date he filed his DFEH complaint.

As noted, Gerber contends he satisfied his burden to make this showing because the trial court "completely ignore[d] the most critical piece of *undisputed* evidence in this case—[his] termination," which occurred in late January 2010 or within a year of when he filed his DFEH complaint.

However, we conclude the termination "evidence" proffered by Gerber—even when viewed in the light most favorable to him (see *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142), is insufficient to satisfy his burden to establish a triable issue of material fact in connection with his FEHA-based claims. For one thing, merely because a person is terminated from employment does not ipso facto mean the person was subject to an unlawful employment practice, as is clearly demonstrated here.

Indeed, the hearing officer in the instant case issued a 34-page report, after a multi-day hearing where numerous witnesses testified. As noted, that report and the subject matter of that proceeding involved the same allegations that also formed the basis of Gerber's June/July 2010 DFEH complaint—retaliation, harassment and discrimination allegedly for being a whistleblower in reporting asbestos and other safety issues. As also noted, the hearing officer found these allegations by Gerber to be baseless and recommended, based on the findings in the report, that Gerber be terminated for a variety of reasons including because: he was inefficient and inattentive to his duties; he failed to

21

perform his duties satisfactorily; he was insubordinate[5]; he abused worker' compensation leave privileges; and he willfully failed to exhibit good conduct that injured the public (i.e., in connection with the thermostats at the SYA); among many other reasons.[6]

We conclude the hearing officer's findings, and the recommendation to terminate Gerber based on those findings—which Gerber did not challenge by writ of mandate (see Cal. Code Civ. Proc., § 1094.5), preclude as a matter of law a showing of a triable issue of material fact that Gerber was terminated based on some *unlawful* employment action.

That does not end the analysis, however. Gerber alternatively contends the one-year limitations period applicable to filing an administrative claim with the DFEH was tolled based on equitable principles. We now turn to that issue.

---

[5] In particular with regard to insubordination, the hearing officer noted in the report that it "is a serious offense that, if left unchecked, can damage the efficiency and effectiveness of an entire workgroup. The consequence of insubordination is most often discharge. In this case, the seriousness of insubordination is only surpassed by Mr. Gerber's deliberate vandalizing of the HVAC system at the San Ysidro Adult School. The many efforts to turn around Mr. Gerber's poor attitude have been fruitless. There is no reason to believe that any further efforts by the District to rehabilitate this once productive employee would be successful. Discharge from employment is the only appropriate remedy for this disgruntled, manipulative employee."

[6] Gerber for the *first* time on appeal contends that the hearing officer's report itself should be excluded because it allegedly relied on "inadmissible hearsay" and included "disputed material facts." This contention borders on the frivolous. First, Gerber forfeited this objection by not raising it below. (See Code Civ. Proc., § 437c, subd. (b)(5) ["[e]videntiary objections not made at the hearing shall be deemed waived"]; see also *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 453, fn. 3 [concluding the defendants' failure to object to deposition testimony "bars any hearsay objection on appeal"].) Second, Gerber's failed to set forth what "facts" in the report are allegedly inadmissible and how the admission of such "facts" was *unduly* prejudicial to him.

C. *Equitable Tolling*

"The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine. [Citations.] It is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.' [Citation.] Where applicable, the doctrine will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.' " (See *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 (*McDonald*).)

"Broadly speaking, the doctrine applies ' "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." ' [Citations.] Thus, it may apply where one action stands to lessen the harm that is the subject of a potential second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason. [Citation.]

"Its application in such circumstances serves 'the need for harmony and the avoidance of chaos in the administration of justice.' [Citation.] Tolling eases the pressure on parties 'concurrently to seek redress in two separate forums with the attendant danger of conflicting decisions on the same issue.' [Citations.] By alleviating the fear of claim forfeiture, it affords grievants the opportunity to pursue informal remedies, a process we have repeatedly encouraged. [Citations.] The tolling doctrine does so without compromising defendants' significant 'interest in being promptly apprised of claims against them in order that they may gather and preserve evidence' because that

23

notice interest is satisfied by the filing of the first proceeding that gives rise to tolling. [Citations.] Lastly, tolling benefits the court system by reducing the costs associated with a duplicative filing requirement, in many instances rendering later court proceedings either easier and cheaper to resolve or wholly unnecessary." (*McDonald*, *supra*, 45 Cal.4th at p 100.)

1. Equitable Tolling

Gerber contends the court erred when it refused to extend the one-year limitations period for filing an administrative complaint with the DFEH based on the equitable tolling doctrine. Specifically, Gerber contends this doctrine applies because he was involved in administrative proceedings during the limitations period under Government Code section 12960, subdivision (d), including the termination proceeding brought by the District and a separate workers' compensation proceeding he filed against the District for injuries he asserts arose from the retaliation he endured at the proverbial hands of the District and its employees. We reject this contention.

We independently conclude the equitable tolling doctrine does not apply in connection with the termination proceeding that took place between May and October 2009, inasmuch as that proceeding was initiated by the District and *not* by Gerber. Thus, it was not a proceeding where, for example, Gerber was seeking to exhaust his administrative remedies or where there was concern of " 'conflicting decisions on the same issue' " if he was simultaneously required to pursue his administrative complaint against the District. (See *McDonald*, *supra*, 45 Cal.4th at p. 100.)

With regard to the workers' compensation claim, we note Gerber did *not* raise this contention or proffer any evidence to support it in his opposition to the motions for summary judgment, despite the fact his renewed request for judicial notice to this court shows the workers' compensation documents were in existence in 2008 and at least one of them was prepared by Gerber and/or his legal counsel.  As such, we conclude no exceptional circumstances exist for us to consider this "evidence" and for this reason alone, we deny his contention that his workers' compensation claim equitably tolled the one-year limitations period applicable to his administrative complaint.  (See e.g., *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [noting absent exceptional circumstances, "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court," and thus noting " 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' "])

In any event, we reject on the merits Gerber's contention that his pursuit of a workers' compensation claim against the District and its insurer equitably tolled the limitations period for filing his separate administrative claim for retaliation, harassment and discrimination against the District and its employees/former employees.  We conclude the two claims are "not alternative remedies for the same harm," but rather "are different remedies for different harms."  (See *Aeroject Gen. Corp. v. Superior Court* (1986) 177 Cal.App.3d 950, 956 [refusing to apply the equitable tolling doctrine to fraudulent concealment claim for aggravation of an injury brought after the plaintiff filed a workers' compensation claim based on that injury].)

25

The instant case is thus unlike the facts of *McDonald*, where our Supreme Court held that the equitable tolling doctrine applied to render timely the plaintiff's complaint for racial discrimination under the FEHA when the plaintiff previously filed and pursued a complaint involving the *same* conduct by invoking a community college's internal grievance procedures that included, among other protections, the right to appeal to a local board of trustees and even to the chancellor's office. (*McDonald*, *supra*, 45 Cal.4th at p. 97; see also *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 929 [noting a workers' compensation claim pursued by the plaintiff firefighter tolled the limitations period for a disability retirement claim because both claims were based on the same disabling injury].)

Because a workers' compensation claim is not a prerequisite, is in no way similar, or is required for exhaustion purposes, to the filing of an administrative claim with the DFEH, we conclude as a matter of law the equitable tolling doctrine does not apply on this basis here.

2.  Continuing-Wrong Accrual Principles

"There are two main branches" to the continuing-wrong accrual principles, to wit: "the continuing violation doctrine and the theory of continuous accrual." (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1197 (*Aryeh*).) "The continuing violation doctrine serves a number of equitable purposes. Some injuries are the product of a series of small harms, any one of which may not be actionable on its own. [Citation.] Those injured in such a fashion should not be handicapped by the inability to identify with certainty when harm has occurred or has risen to a level sufficient to

26

warrant action. [Citations.] Moreover, from a court-efficiency perspective, it is unwise to impose a limitations regime that would require parties to run to court in response to every slight, without first attempting to resolve matters through extrajudicial means, out of fear that delay would result in a time-barred action. [Citations.] Allegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period." (*Id.* at pp. 1197-1198.)

We conclude the continuing violation doctrine does not apply to toll the one-year limitations period for filing an administrative complaint with the DFEH. The record here shows that Gerber was placed on administrative leave in April 2009. Significantly, it further shows there were *no* additional acts or series of acts by the District and/or its employees after April 2009 (excluding from consideration, as noted *ante*, the administrative hearing itself and Gerber's resulting termination, which was based on just cause). As such, the continuing violation doctrine offers no relief to Gerber, who filed his DFEH administrative claim in late June/early July 2010, or more than a year after any potential unlawful employment practice by the District and/or its employees may have occurred.

For the same reason, we also conclude the theory of continuous accrual (raised by Gerber for the first time on appeal) does not apply here. "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a

wrongful act occurs, triggering a new limitations period.' [Citation.]  Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation [citation]—each may be treated as an independently actionable wrong with its own time limit for recovery.  [¶]  However, unlike the continuing violation doctrine, which renders an entire course of conduct actionable, the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period."  (*Aryeh*, *supra*, 55 Cal.4th at p. 1199.)

Because there were no additional unlawful employment practices/acts by the District and/or its employees after April 2009 and because Gerber filed his administrative claim more than a year after the cessation of such practices/acts, we conclude the continuous accrual doctrine also does not apply to toll the applicable statute of limitations set forth in section 12960, subdivision (d) of the Government Code.  We thus further independently conclude the trial court properly granted summary judgment on Gerber's FEHA-based claims.

## II

### *IIED*

Gerber also contends the trial court erred when it found his government tort claim against the district was untimely.

A.  *Guiding Principles*

"The Government Claims Act (§ 810 et seq.) 'establishes certain conditions precedent to the filing of a lawsuit against a public entity.  As relevant here, a plaintiff must timely file a claim for money or damages with the public entity.  ([Gov. Code,]

28

§ 911.2.) The failure to do so bars the plaintiff from bringing suit against that entity. ([Gov. Code,] § 945.4.)' (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1237.) '[T]he claims presentation requirement applies to all forms of monetary demands, regardless of the theory of the action. . . .' [Citation.] 'The policy underlying the claims presentation requirements is to afford prompt notice to public entities. This permits early investigation and evaluation of the claim and informed fiscal planning in light of prospective liabilities.' (*Ibid.*)

"Claims for personal injury must be presented not later than six months after the accrual of the cause of action . . . . ([Gov. Code,] § 911.2, subd. (a).) Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to maintain an action against the public entity. (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209.) 'Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity.' (*Ibid.*)

"The failure to timely present a claim to the public entity bars the claimant from filing a lawsuit against that public entity. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454.) Moreover, because the purpose of the claim is not 'to prevent surprise [but rather] is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation [citations,] . . . [i]t is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such

29

knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel.' (*Id.* at p. 455.)" (*California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1591-1592.)

Here, we conclude Gerber's IIED claim accrued at the latest in April 2009 when he was placed on administrative leave by the District. As we already have noted, after April 2009 the undisputed evidence shows Gerber had no further contact (other than in the administrative hearing) with the District and/or its employees. As such, any conduct by the District and/or its employees that potentially would constitute "extreme and outrageous" behavior occurred at the latest in April 2009.[7] As such, Gerber was required to present his government tort claim no later than October 2009. (See Gov. Code, § 911.2, subd. (a).) The record shows, however, he did not file that claim until June 28, 2010. Thus, we independently conclude the trial court properly granted summary judgment on Gerber's eighth cause of action for IIED.[8]

---

[7]   As we previously noted, we do not consider Gerber's termination from employment with the District in January 2010 as an unlawful employment practice given the undisputed findings and recommendation of the neutral hearing officer, discussed in detail *ante*, and given the fact Gerber neither challenged those findings and recommendation by writ of mandate nor proffered sufficient other evidence to create a triable issue of material fact.

[8]   In light of our conclusions that summary judgment was properly granted in favor of the District on Gerber's FEHA-based claims and his IIED claim, and given the undisputed evidence in the record that Gerber had no additional contacts with the individual defendants/employees/former employees of the District after he was placed on administrative leave in April 2009, we independently conclude the trial court also properly granted the individual defendants' separate motions for summary judgment.

DISPOSITION

We affirm the judgment in favor of the District and the individual defendants/employees/former employees of the District based on the grant of their summary judgment motions. The defendants are awarded their costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.

31